IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| KIMBERLY NANCE-GOBLE, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW SAUL, )<br>Commissioner of the Social )<br>Security Administration, )<br>      Defendant. ) | 4:20-cv-00369-CLM |

## **MEMORANDUM OPINION**

Kimberly Nance-Goble seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Nance-Goble's application in an opinion written by an Administrative Law Judge ("ALJ").

Nance-Goble argues: (1) the ALJ did not adequately consider her testimony about her medication side effects; (2) the ALJ erred in finding that she could perform her past work; (3) the ALJ should have afforded greater weight to the testimony of her primary care physician; and (4) the ALJ's decision is not supported by substantial evidence.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

1

## I.    Statement of the Case

Nance-Goble has had two applications for disability and disability insurance benefits denied. This appeal involves the second, which alleges a disability onset date of August 19, 2015, the day after Nance-Goble received her first unfavorable decision. Before the court details Nance-Goble's two unfavorable decisions, it summarizes Nance-Goble's impairments, as she told them to the second ALJ.

### A.    Nance-Goble's Disability, as told to the second ALJ

Nance-Goble was 46 years old when the ALJ denied her second application for benefits. R. 18, 195. Nance-Goble studied nursing for two years in college but did not graduate. R. 45. And she has past relevant work as a certified nurse assistant and medical records clerk. 45–46, 52.

At the ALJ hearing, Nance-Goble testified that she has back pain, cannot stand or sit for long periods, and must move around a lot. R. 46. Nance-Goble also testified that she has constant numbness from her right knee to her hip, which has caused her to fall several times. R. 47. And Nance-Goble said that her medications made her "drowsy, kind of foggy," and unable to think clearly. R. 49.

Nance-Goble lives with her husband about 30 minutes outside Gadsden, Alabama. R. 45. And Nance-Goble told the ALJ that if someone offered her a full-time job, she would probably have trouble making it to work every day because of her back pain. R. 49.

### B.     The First ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Nance-Goble first applied for disability and disability insurance benefits in October 2013, and the SSA first denied her claims in November 2013. R. 62. After conducting a hearing, the first ALJ issued Nance-Goble an unfavorable decision in August 2015. R. 59–78. The ALJ found that Nance-Goble suffered from several severe impairments and could not perform her past relevant work as a certified nursing assistant. R. 65, 76. But he determined that Nance-Goble was not disabled under the Social Security Act because she could perform several jobs that exist in significant numbers in the national economy. R. 77.

Nance-Goble then appealed the ALJ's decision to the SSA Appeals Council, this court, and the Eleventh Circuit. None of those appeals succeeded. *See Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912 (11th Cir. 2019). So Nance-Goble's second application for benefits is the only application at issue.

### C.     Determining Disability

Before detailing Nance-Goble's second application for benefits, it is important to lay out the SSA's five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of determining Nance-Goble's residual functional capacity is the most important step

here, as almost all of Nance-Goble's challenges flow from the ALJ's decision at this juncture.

### C. The Second ALJ's Decision

Nance-Goble filed her second application for benefits in January 2017, claiming that she was unable to work because of various ailments, including lumbar degenerative disc disease, status post L4-5 fusion with failed back syndrome and permanent placement of spinal cord stimulator; fibromyalgia; obesity; GERD; depression; and anxiety. After receiving an initial denial in April 2017, Nance-Goble requested a hearing, which the ALJ conducted in February 2019. The ALJ ultimately issued an opinion denying Nance-Goble's claims in March 2019. R. 21–34.

At Step 1, the ALJ determined that Nance-Goble was not engaged in substantial gainful activity and thus her claims would progress to Step 2. R. 24.

At Step 2, the ALJ determined that Nance-Goble suffered from the following severe impairments: lumbar degenerative disc disease status post L4-5 fusion with failed back syndrome and permanent placement of spinal cord stimulator; fibromyalgia; and obesity. R. 24–27.

At Step 3, the ALJ found that none of Nance-Goble's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 27–28. Thus, the ALJ next had to determine Nance-Goble's residual functional capacity.

The ALJ determined that Nance-Goble had the residual functional capacity to perform light work with these added limitations:

- Nance-Goble can only occasionally push and pull bilaterally;

- Nance-Goble can only occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds;

- Nance-Goble can frequently balance but can only occasionally stoop, kneel, crouch, and crawl;

- Nance-Goble must avoid concentrated exposure to extreme temperatures, wetness, vibration, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants;

- Nance-Goble must avoid even moderate exposure to hazards, such as open flames, unprotected heights, and dangerous moving machinery;

- Nance-Goble must be allowed to alternately sit and stand every 10 to 15 minutes throughout the workday for the purpose of changing positions, but without leaving the workstation.

R. 28–33.

At Step 4, the ALJ found that Nance-Goble could not perform her past work as a nurse assistant. R. 33. But he found that she could perform her past work as a medical records clerk as generally performed. R. 33–34. So the ALJ found that Nance-Goble was not disabled under the Social Security Act. R. 34.

Nance-Goble requested an Appeals Council review of the ALJ's decision. R. 1–3. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's

decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.     Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.    Legal Analysis

Nance-Goble makes four arguments for why the ALJ erred in finding her not disabled. She first argues that the ALJ erred by not addressing her testimony about her medication side effects. She next asserts that the ALJ's finding that she can perform her past work is not supported by substantial evidence. Nance-Goble's third argument relates to the ALJ's evaluation of opinion evidence from her primary care physician, Dr. Sims. Finally, Nance-Goble contends that the ALJ's decision lacks the support of substantial evidence. The court addresses each argument in turn.

### A.  Nance-Goble has not shown that the ALJ erred by failing to adequately consider her testimony about her medication side effects.

Nance-Goble first argues that the ALJ erred by failing to adequately consider her testimony about the side effects of her pain medication. "In determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms." *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010). And to fulfill his duty to adequately develop the record, an ALJ may need to elicit testimony and make findings "regarding the effect of [the claimant's] prescribed medications upon her ability to work." *See Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981).

Here, in response to a question from her attorney, Nance-Goble testified at the ALJ hearing that her pain medications made her "drowsy [and] kind of foggy," prevented her from thinking clearly, and caused her to gain weight. R. 49. Nance-Goble then said that her side effects lasted "[p]retty much all day." *Id.* The ALJ's hearing decision does not specifically mention this testimony about Nance-Goble's medication side effects. *See* R. 18–41. Relying on *Cowart*, Nance-Goble asserts that the ALJ erred by failing to explicitly discuss her testimony on the side effects of her medication. For four reasons, the court finds that the ALJ did not reversibly err.

First, *Cowart* is distinguishable. In that case, the claimant was proceeding pro se, so the ALJ had a "special duty" to develop a full and fair hearing. *See Cowart*,

8

662 F.3d at 735. Here, in contrast, an attorney represented Nance-Goble during the ALJ proceedings. Plus, the claimant in *Cowart* testified that her disabling impairments included "side effects from prescribed medications." *Id.* at 733. But Nance-Goble did not mention her medication side effects as a disabling impairment when first questioned by the ALJ. R. 45–49. Instead, she told the ALJ that her back pain was the main reason why she hadn't worked since 2015. R. 46–47. So "the ALJ's failure to inquire further into possible side effects did not deprive [Nance-Goble] of a meaningful opportunity to be heard." *See Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985) (finding that ALJ did not err by failing to continue to investigate allegations of drug dependency when claimant "was represented at the hearing and did not allege that side effects of drugs contributed to her disability").

Second, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" as long as the decision is not "a broad rejection" that casts doubt on whether the ALJ considered the claimant's "medical condition as a whole." *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). And while the ALJ did not specifically mention Nance-Goble's testimony about her medication side effects, he did state that he had considered ***all*** Nance-Goble's symptoms based on the requirements of 20 C.F.R. §§ 404.1529, 416.929. R. 28. These regulations provide that an ALJ will consider "[t]he type, dosage, effectiveness, and side effects of any medications" when evaluating a claimant's testimony about her symptoms.

9

*See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). So Nance-Goble has not shown that the ALJ failed to consider her testimony about her medication side effects when he evaluated her subjective pain testimony. *See Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (finding that ALJ who did not specifically mention testimony about medication side effects considered side effects because she cited to regulations that said she had to consider medication side effects when evaluating the claimant's subjective pain testimony).

Third, although the ALJ did not cite Nance-Goble's hearing testimony about her medication side effects, he did discuss Nance-Goble's mother's report that her medications made her tired and that she slept a lot. R. 33 (citing R. 273). These reported medication side effects are like Nance-Goble's testimony that her medications made her drowsy. And the ALJ found that Nance-Goble's mother's statements about Nance-Goble's side effects were not entirely consistent with the record evidence because (1) Nance-Goble rarely, if ever, complained to a treatment provider of need to lie down/sleep a lot, and (2) Nance-Goble found Percocet effective and reported good relief from her spinal cord stimulator. *Id.* Substantial evidence supports these findings. *See* R. 508, 568–69, 547. So the ALJ did not have to credit Nance-Goble's testimony that her medications made her drowsy.

Finally, "the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving she is disabled." *Walker*, 404 F. App'x at 366.

10

"Thus, the claimant must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work." *Id.* The administrative record is over 1,000 pages. But Nance-Goble cites no objective evidence to support her contention that her medications cause drowsiness and fogginess, prevent her from thinking clearly, and lead to weight gain. And "[n]othing in [Nance-Goble's] testimony suggested that her [medication side effects] were severe enough to be disabling either alone or in combination with her other impairments." *Id.* at 367. In short, Nance-Goble has not shown that the ALJ's handling of her testimony about her medication side effects was reversible error.

> **B.     The ALJ did not err in finding at Step 4 that Nance-Goble could perform her past relevant work.**

Nance-Goble next argues that the ALJ erred in finding that she could perform her past work as a medical records clerk. This argument has three parts.

1. <u>Development of the record</u>: First, Nance-Goble argues that the ALJ did not adequately develop the record as to the physical and mental demands of her past work. Nance-Goble stated in both her work history report and ALJ hearing testimony that she had past work as a nurse assistant and medical records clerk. R. 45–46, 259–61. At the ALJ hearing, a vocational expert consulted the Dictionary of Occupational Titles ("DOT") and testified that a hypothetical person with Nance-Goble's residual functional capacity could perform her past work as a medical records clerk, as generally performed. R. 51–52. Relying on this testimony and the DOT, the ALJ

11

compared Nance-Goble's residual functional capacity with the physical and mental demands of work as a medical records clerk as generally performed and found that Nance-Goble could perform her past work as a medical records clerk. R. 33–34.

The SSA's regulations authorize ALJs to consult the DOT and consider the testimony of vocational experts to determine whether a claimant can perform her past relevant work. *See* 20 C.F.R. § 404.1560(b)(2). And Nance-Goble does not dispute the accuracy of the vocational expert's testimony. Instead, Nance-Goble asserts that the ALJ needed more information about her specific duties as a medical records clerk to find that she could perform her past work. She also notes that the first ALJ found that she could not perform her past relevant work.

"[I]t is [Nance-Goble's] burden to demonstrate not only that she can no longer perform her past relevant work as she actually performed it, but also that she can no longer perform this work as it is performed in the general economy." *See Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010). And the vocational expert's testimony and DOT provided substantial evidence to support the ALJ's finding that Nance-Goble could perform her past work as a medical records clerk, as generally performed. The court also notes that while the first ALJ found that Nance-Goble could not perform her past relevant work, he only considered whether she could perform her past work as a certified nursing assistant. R. 76. He did not consider whether she could perform work as a medical records clerk. *See id.* So

Nance-Goble's argument that the ALJ did not adequately develop the record or assess the demands of her past work lacks merit.

2. SSR 96-8p: Nance-Goble next argues that before the ALJ could determine that Nance-Goble could perform her past relevant work, the ALJ needed to assess her residual functional capacity on a function-by-function basis. SSR 96-8p requires a residual functional capacity assessment to "identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184. Only after an ALJ conducts that analysis, may the claimant's residual functional capacity "be expressed in terms of exertional levels of work." *See id.* At least two unpublished Eleventh Circuit opinions have stated that an ALJ meets this requirement by discussing the relevant evidence in the record and citing a regulation that defines the exertional demands of the claimant's residual functional capacity. *See Casteel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220 F. App'x 957, 959–60 (11th Cir. 2007).

The ALJ's decision thoroughly discusses Nance-Goble's medical records, evidence of Nance-Goble's daily life activities, and Nance-Goble's hearing testimony. R. 28–33. Plus, the ALJ cited the regulations that define the exertional demands of light work. R. 28. Thus, under Eleventh Circuit case law, the ALJ

satisfied the requirements of SSR 96-8p. *See Casteel*, 355 F. App'x at 263; *Freeman*, 220 F. App'x at 959–60.

Nance-Goble, however, seems to argue that SSR 96-8p requires an ALJ to rely on a physical capacities evaluation when evaluating a claimant's functional limitations. But at the hearing level, the ALJ, and not doctors, has the sole responsibility of assessing a claimant's residual functional capacity. 20 CFR § 404.1546(c). And Nance-Goble does not specify any functional limitation that she has that the ALJ failed to consider. Nor does Nance-Goble point to any relevant objective medical evidence that the ALJ did not consider. So the court finds that the ALJ's residual functional capacity determination satisfied SSR 96-8p.

3. <u>Evaluation of work capacity</u>: While Nance-Goble makes the two arguments discussed above in her initial brief, her reply brief adds a third argument for why the ALJ erred in finding that she could perform her past work. In her reply brief, Nance-Goble cites *Smith v. Saul*, 2020 WL 91535 (N.D. Ala. Jan. 8, 2020), in which the court held that the ALJ erred in finding that the plaintiff could perform her past relevant work, not because the ALJ did not develop the record as to her past work, but because the ALJ failed to properly evaluate her subjective pain testimony.

For two reasons, the court finds that Nance-Goble has waived this argument. First, this court doesn't typically consider arguments made for the first time in a reply brief. *See KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1328 n.4

(11th Cir. 2004). Second, though Nance-Goble's reply brief cites *Smith*, she fails to explain how the facts of *Smith* apply here. Nor does she point the court to the portions of the record that she contends show that the ALJ erred by discrediting her subjective testimony. So Nance-Goble has insufficiently raised this issue on appeal. *See Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009). In any event, as explained below, Nance-Goble has failed to show that the ALJ's disability determination lacks the support of substantial evidence.

### C. The ALJ did not err in evaluating the opinion evidence.

Nance-Goble's third argument centers on the ALJ's evaluation of opinion evidence from her primary care physician, Dr. Sims. In a March 2015 letter, which predates Nance-Goble's alleged disability onset date, Dr. Sims wrote: "[a]t this time I do not feel [Nance-Goble] could be gainfully employed partially due to her physical condition and also the mental demands of a work situation." R. 764. He then said that he felt that working "would be negative to [Nance-Goble's] ability to function" and that "[t]his may continue with time but it may be a long standing problem, only time will tell." *Id.* In support of his opinion, Dr. Sims cited Nance-Goble's recent lumbar surgery and history of fibromyalgia, osteoarthritis, and depression. *Id.*

The ALJ afforded Dr. Sims's opinion little weight, noting that Dr. Sims "was not a specialist in any relevant field, such as orthopedics, neurology, or rheumatology." R. 32. The ALJ also found Dr. Sims's opinion to contradict his

15

treating notes and much of the other objective medical evidence. *Id.* So the ALJ determined that "the limitations Dr. Sims opined are inconsistent with the preponderance of the evidence." *Id.*

Nance-Goble argues that the ALJ erred in giving Dr. Sims's opinion little weight because he was a treating source whose opinions the ALJ had to give substantial or considerable weight absent good cause to discount his opinions. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quotation omitted). But an ALJ needn't have good cause to discount an opinion that a claimant is disabled and unable to work because the Commissioner gets to decide those issues. *See* 20 C.F.R. §§ 404.1527(d)(1)–(3), 416.927(d)(1)–(3).

Dr. Sims's statements that Nance-Goble's conditions prevented her from working are statements on issues reserved to the Commissioner. *See id.* Indeed, in affirming the SSA's denial of Nance-Goble's first application for benefits, the Eleventh Circuit held that the first ALJ "properly granted little weight to Dr. Sims's opinions that [Nance-Goble] is disabled and cannot perform her occupational duties because those are legal determinations reserved for the Commissioner." *See Nance*,

781 F. App'x at 919. So the ALJ did not have to afford any special significance to these statements. *See* 20 C.F.R. §§ 404.1527(d)(1)–(3), 416.927(d)(1)–(3).

The ALJ also articulated good cause for discounting the other statements in Dr. Sims's March 2015 letter, including his opinion that Nance-Goble's back surgery "is considered a failed lumbar interverbal disc repair." R. 764. First, as the ALJ noted, Dr. Sims is a general practitioner, not a specialist. And whether a doctor is a specialist in the area in which he is giving an opinion is a relevant factor for an ALJ to consider. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Second, substantial evidence supports the ALJ's finding that Dr. Sims's treatment notes from around the time he wrote the letter do not support the limitations he identified. Dr. Sims had most recently seen Nance-Goble for a wellness checkup before she had a lower spine fusion in November 2014. R. 965–67, 918–21. During that wellness checkup, Dr. Sims found that upon examination Nance-Goble was within normal limits and that she had a normal range of motion. R. 967. And Dr. Sims's treatment notes immediately following Nance-Goble's spinal fusion do not support the statements in his letter. Instead, these treatment notes reflect only that Nance-Goble called Dr. Sims for pain medication refills in November and December 2014. R. 968–69, 1021–22.

Finally, substantial evidence supports the ALJ's finding that the objective medical records do not support Dr. Sims's opinion. For example, the ALJ noted that

17

at Step 2 he had found Nance-Goble's mental impairments of depression and anxiety to be nonsevere. R. 32, 24–26. The ALJ cited to record evidence, such as Nance-Goble's mental status examinations and the state agency psychologist's report, to support this finding. *See* R. 24–26 (citing R. 97–99, 111–13, 430, 491). The ALJ also recognized that based on treating notes from Nance-Goble's orthopedic surgeon around the time Dr. Sims wrote his letter, it was reasonable for Dr. Sims to conclude that Nance-Goble "was experiencing some exacerbated post-surgical pain." R. 32. But the ALJ determined that the record did not reflect a long-lasting period of exacerbation. *Id.* In support of this finding, the ALJ pointed out that Nance-Goble stated in October 2015 that her pain medications were effective in treating her pain and that in December 2015 Nance-Goble reported that she had managed to get by without having her hardware removed. *Id.* (citing R. 508, 557). And as the ALJ noted, Nance-Goble somewhat controlled her fibromyalgia by taking gabapentin. R. 568, 603. So the record evidence does not compel the conclusion that the ALJ erred when he discounted Dr. Sims's March 2015 letter.

### D. Substantial evidence supports the ALJ's decision.

Nance-Goble finally argues that the ALJ's decision lacks the support of substantial evidence. In making this argument, Nance-Goble mainly rehashes the arguments discussed above. But the court also understands Nance-Goble to be

arguing that evidence of her long work history, diagnoses, and course of treatment establish that she is disabled.

An ALJ need not accept a claimant's subjective pain testimony as true just because she has an excellent work history. *See Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). And this court cannot reweigh the evidence. *See Winschel*, 631 F.3d at 1178. Nance-Goble has failed to show that the evidence she cites, either individually or combined, compels the conclusion that she is disabled. After reviewing the entire record, the court determines that a reasonable person viewing the record evidence could have reached the same conclusions as the ALJ. So substantial evidence supports the ALJ's decision. *Crawford*, 363 F.3d at 1158.

## IV.   Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on June 11, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE